IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ADVANCED BASEBALL ACADEMY, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 14-2461-CM |
| ) | |
| **GOOGLE, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Plaintiff Advanced Baseball Academy ("plaintiff") filed this trademark action against defendants Google, Inc.; Gold Glove Baseball Academy LLC; Gold Glove Baseball and Softball; and Gold Line Apparel ("defendants"). Plaintiff initially brought various Lanham Act trademark claims, including trademark infringement, false designation of origin, and unfair competition; a claim for copyright infringement; and two Kansas common law claims for unfair competition and trademark infringement. According to plaintiff, these claims all relate to defendants' alleged infringement of plaintiff's logo ("LOGO MARK") and the words "Gold Glove Boot Camp" ("WORD MARK"). After filing the case, plaintiff dismissed Google, Inc. as a defendant, and also dismissed its copyright claim. The case is now before the court on defendants' Motion to Dismiss plaintiff's First Amended Complaint or, alternatively, to Require a More Definite Statement (Doc. 8).

Defendants argue that they are entitled to dismissal of this case for two reasons: (1) Plaintiff cannot recover for infringement of the LOGO MARK because defendants used the logo before plaintiff did; and (2) The WORD MARK is such a generic term that, as a matter of law, there is no risk of consumer confusion. The court addresses these arguments below, and ultimately denies defendants' motion to dismiss.

**I.      LEGAL STANDARD**

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). In reviewing the sufficiency of a complaint, the court determines whether the plaintiff is entitled to offer evidence to support its claims—not whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

Where dismissal is improper, a court may still require a more definite statement under Rule 12(e) if a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). This is a demanding standard that requires a pleading be so incoherent that it is impossible to identify a "bas[is] for jurisdiction and relief." *Crisler v. Sedgwick Cnty.*, 490 F. App'x 983, 985 (10th Cir. 2012). Where a party can identify the issues in a pleading that require a response, a motion for a more definite statement is generally disfavored because the federal rules provide liberal discovery mechanisms for filling in any remaining informational gaps. *Resolution Trust Corp. v. Thomas*, 837 F. Supp. 354, 355 (D. Kan. 1993).

**II.     FACTUAL BACKGROUND**

The following facts are taken from plaintiff's First Amended Complaint and viewed in the light most favorable to plaintiff.

Plaintiff operates a baseball and softball training facility in the Kansas City area. Defendants own and operate a competing baseball facility and an athletic-clothing business. Plaintiff uses a logo that features the letters "GG" with one "G" turned inward to face the other "G" (LOGO MARK). Plaintiff also promotes its services using the term "Gold Glove Boot Camp" (WORD MARK).

Plaintiff alleges that defendants have used plaintiff's same LOGO MARK on the internet and in advertisements. Plaintiff also alleges that defendants' use of the terms "Gold Glove KC" and "Gold Glove Academy" infringe on plaintiff's WORD MARK.

**III.    DISCUSSION**

Plaintiff asserts several trademark infringement claims under the Lanham Act and Kansas Law. Though different in name, all of these claims share the same essential elements: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring in result) (noting that "[t]oday, it is less significant whether the infringement falls under 'false designation of origin' or 'false description or representation' because in either case [15 U.S.C. § 1125(a)] may be invoked."); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (explaining that Lanham Act claims for trademark infringement and unfair competition "have virtually identical elements and are properly addressed together"); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2008 WL 917635, at *8, *12 (D. Kan. Mar. 31, 2008) (clarifying that "[t]he Kansas

Trademark Act is the state counterpart of the Lanham Act, and . . . construction given the federal act should be examined as persuasive authority for interpreting" the Kansas Act, especially because "[t]he elements of proof under both legal theories are identical"); *Polo Fashions, Inc. v. Diebolt, Inc.*, 634 F. Supp. 786, 790 (D. Kan. 1986) (instructing that "the essential element of a claim of unfair competition is the same as that for the infringement and false designation of origin claims.").

Here, plaintiff brings claims for infringement of two allegedly protected Marks: the LOGO MARK (an image with the letters "GG" in the middle), and the WORD MARK (the words: "Gold Glove Boot Camp"). While defendants seek to dismiss plaintiff's infringement claims for both Marks, defendants raise different arguments against the different infringement claims.

Specifically, defendants seek dismissal of the LOGO MARK claims based on plaintiff's alleged lack of a protected interest in the Mark. Defendants claim that plaintiff lacks priority rights to the LOGO MARK because defendants used the logo before plaintiff did. To support this argument, defendants attached documents and historical materials as exhibits to their motion to dismiss. (Doc. 8-1; 8-2.) Defendants argue that these materials show that plaintiff lacks a plausible claim and, therefore, cannot survive a Rule 12(b)(6) motion to dismiss.

Regarding the WORD MARK claims, defendants seek dismissal based on the consumer confusion and protected interest elements. According to defendants, there is no risk of consumer confusion because "Gold Glove" is a common, generic baseball term. (Doc. 8 at 6–7.) Defendants contend that, as a matter of law, the WORD MARK lacks a distinct connection to plaintiff, and there is no risk of confusion because the term is familiar to consumers.

The court denies defendants' motion to dismiss and the alternative motion for a more definite statement for three reasons. First, regarding the LOGO MARK claims, plaintiff has alleged sufficient facts to state a plausible infringement claim and comply with the pleading requirements under Fed. R.

Civ. P. 8(a). Second, defendants have not shown as a matter of law that their "prior use" claim justifies dismissal of the LOGO MARK claims. Finally, regarding the WORD MARK claims, defendants' consumer confusion arguments center on fact-intensive issues that are not proper to resolve at the motion-to-dismiss stage.

    **A.**    **The LOGO MARK**

        **1.**    **Plausibility**

Defendants contend that plaintiff's Amended Complaint lacks specific facts about the precise moment when plaintiff first used the LOGO MARK. According to defendants, plaintiff's use of the phrase "at least as early as," followed by a certain date, is not evidence of actual use before that date. (Doc. 11 at 3.) Without proof that the date of plaintiff's first use preceded defendants' first time using the LOGO MARK, defendants argue that plaintiff cannot establish a protectable interest in the Mark. Absent a protectable interest, plaintiff is not entitled to relief for any infringement of the LOGO MARK, which, defendants conclude, means that plaintiff cannot survive a 12(b)(6) motion to dismiss.

            **a.**    **The Purpose of Pleadings is to Provide Notice, not Detail**

Rule 8(a) does not require pleadings to contain the level of specificity that defendants desire. The Rule uses the words "short" and "plain" in providing the requisite level of detail for a Complaint. Fed. R. Civ. P. 8(a)(2). These words reflect that the central purpose of federal pleading standards is to provide notice of the plaintiff's claims and the basic grounds for those claims. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Thus, as the Supreme Court clarified after its ruling in *Twombly*, even "[s]pecific facts are not necessary[,]" so long as a defendant has fair notice of the asserted claims. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (explaining that, even under *Twombly*, pleadings need only contain

enough information to provide parties with basic notice about the claims in a case); *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (noting that defendants need only "provide the plaintiff with fair notice" when "pleading an affirmative defense").

Defendants often want more detail and specific information about the allegations in the Complaint. To address this information gap, the federal rules provide "liberal discovery rules" that enable both parties to obtain substantial evidence and specific information about the case. *Swierkiewicz*, 534 U.S. at 512. These broad discovery abilities make summary judgment motions— instead of motions to dismiss—effective tools to "define disputed facts and issues[,] dispose of unmeritorious claims[,]" and preserve meritorious claims that simply require access to discoverable evidence in order to satisfy a burden of proof. *Id.*

### b. Special Significance of Discovery in Trademark Cases

In trademark cases, courts have been careful to prevent 12(b)(6) motions from becoming premature summary judgment motions. *See Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (emphasizing importance of assuming allegations in a Complaint to be true in trademark infringement cases); *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1156–58 (D.N.M. 2013) (denying motion to dismiss in trademark infringement case and refusing to consider defendant's submitted exhibits until summary judgment). This approach reflects the important role that the discovery process plays in navigating the fact-intensive nature of trademark infringement cases. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1239–40 (10th Cir. 2006) (providing six-factor test to weigh various facts in each case for a single infringement element); *Am. Fence Co. of the Midwest v. Gestes*, 375 P.2d 775, 779 (Kan. 1962) (noting that the resolution of every trademark case "necessarily depends upon its own peculiar facts").

        **c.**      **Plaintiff's Allegations are Sufficient to Survive a Motion to Dismiss on the LOGO MARK Claims.**

Consistent with the cases cited above, plaintiff's allegations in the Amended Complaint satisfy the notice-pleading standards in Rule 8(a)(2).  Specifically, the allegations in the Amended Complaint concerning the LOGO MARK provide sufficient facts to state plausible claims of trademark infringement for which plaintiff is entitled to relief.  As the last two infringement elements are uncontested, the court turns to defendants' argument that plaintiff's first time using the LOGO MARK occurred after defendants' use.

Defendants essentially assert a "prior use" affirmative defense in support of the motion to dismiss.  But defendants raise few arguments that specifically relate to the substantive elements of the LOGO MARK claims.  So, while defendants argue that plaintiff cannot satisfy the protected interest element because of the "prior use" timing, that argument combines two distinct concepts.

For trademark claims, a "protectable interest" refers to a Mark that distinguishes one person's products or services from those of a competitor.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)); *see Hudson Assocs. Consulting, Inc. v. Weidner*, No. 06-2461-EFM, 2010 WL 1946414, at *8 (D. Kan. May 14, 2010) (adding that a Mark can be protectable based on a *capability* of distinguishing an item or service "it marks from those of others.").  Due to countless differences and similarities, Marks are classified in five different categories with different levels of protection based on the distinctness of the category.  *See Donchez*, 392 F.3d at 1216 (increasing the level of protection based on a Mark's increased level of distinction).

Here, plaintiff's simple description of the LOGO MARK, which involves the inverted "GG" and diamond-shaped outline, are enough to support plaintiff's entitlement to a protectable interest in the LOGO MARK.  (Doc. 7 at 4.)  While defendants emphasize the timeframe for plaintiff's first use

of the LOGO MARK, defendants are silent about the LOGO MARK's distinctiveness. With no dispute about the LOGO MARK's distinctiveness—which is the factor that establishes a protectable interest—plaintiff's allegations satisfy all three elements for the LOGO MARK claims.

### 2. Defendants' Prior Use Arguments

Defendants argues that the court must dismiss plaintiff's complaint on one of two bases: (1) the Amended Complaint should be dismissed due to the ambiguity concerning precisely when plaintiff first used that LOGO MARK; or (2) if the Complaint is not vague, then, based on two dates that the Complaint hints at, plaintiff is bound by an admission that defendants were the first to use the LOGO MARK, which defeats plaintiff's right to a protected interest. (Doc. 11 at 2–3.)

#### a. Plaintiff has Provided Sufficient Facts Concerning the Timeframe of Events Giving Rise to the LOGO MARK Claims

Defendants' first argument concerns plaintiff's claim that plaintiff first used the LOGO MARK "at least as early as" December 1, 2013. (Doc. 10 at 6.) Defendants contend that plaintiff has failed to plead sufficient detail to show an entitlement to relief because the phrase "at least as early" does not show that plaintiff actually used the LOGO MARK first. (Doc. 11 at 3.)

To comply with Rule 8(a)(2), plaintiff is not required to provide the specific date or time that it first used the LOGO MARK. *Erickson*, 551 U.S. at 93 (noting that "specific facts are not necessary"). The Amended Complaint provides that plaintiff used the LOGO MARK "substantially and continuously prior to use by Seeling, Anderson, and GLA[,]" which is enough detail to provide defendants with fair notice of the grounds for plaintiff's claim. (Doc. 7 at 4.) Rule 8(a) requires nothing more than that degree of notice. *Swierkiewicz*, 534 U.S. at 512; *Khalik*, 671 F.3d at 1191.

In trademark cases, the time of "first use" may be when a Mark is first included on an advertisement, from an actual sale of goods, from a contract for services, or some other event that is difficult to pinpoint. *Burns v. Realnetworks, Inc.*, 359 F. Supp. 2d 1187, 1192 (W.D. Okla. 2004). It

therefore benefits both parties to have the full discovery period to search through documents, designs, and sales records in an effort to accurately determine when a Mark was first used. *See id.* (discussing various ways that "trademark rights may accrue").

Further, plaintiff identifies several periods of time from which the court can make reasonable inferences that defendants did not use the LOGO MARK prior to plaintiff's first use. For example, plaintiff alleges that defendants formed Gold Glove Baseball Academy in November 2013. (Doc. 7 at 5.) Construing the facts in the light most favorable to plaintiff, it is plausible that plaintiff first used the LOGO MARK a few months, weeks, or even days before defendants finished setting up the new business and placing the LOGO MARK onto merchandise or in advertisements. *Cottrell, Ltd.*, 191 F.3d at 1256–57 (denying a motion to dismiss because, at the pleading stage, unsettled facts are resolved in favor of the plaintiff).

Even accepting December 1, 2013 as the date of plaintiff's first use, the Amended Complaint still alleges that defendants' other company, Gold Line Apparel, did not begin doing business until January of 2014. (Doc. 7 at 6–7.) That time difference is significant because the Amended Complaint never states when Gold Glove Baseball Academy began using the LOGO MARK. But plaintiff does allege that Gold Line Apparel never used the LOGO MARK until at least a month after plaintiff's first use. (*Id.* at 7.) Plaintiff has alleged sufficient facts to state a claim against defendants for infringing on plaintiff's LOGO MARK.

        **b.**     **Defendants' Exhibits Go Beyond the Scope of Plaintiff's Amended Complaint     and Raise Factual Questions that are Improper to Resolve Without a More   Developed Factual Record**

Defendants support their motion to dismiss with two exhibits that speak to the timing of both plaintiff's and defendants' first use of the LOGO MARK. (Doc. 8-1; 8-2.) According to defendants,

one of these exhibits shows that plaintiff's first time using the LOGO MARK occurred more than a week after defendants' use.  (Doc. 8-1.)

Initially, there is a potential procedural barrier to considering defendants' exhibits at the pleadings stage.  Under Rule 12(d), "[r]eversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment."  *Navajo Nation*, 935 F. Supp. 2d at 1157.  In addition, the opposing party must receive notice and have an opportunity to respond with additional evidence.  *Hall v. Bellmon*, 935 F.2d 1106, 1110–11 (10th Cir. 1991).  Essentially, Rule 12(d) transforms the pleading stage into an evidentiary battle that resembles the summary judgment stage.  *Navajo Nation*, 935 F. Supp. 2d at 1157.  This transformation is inefficient, and it forces both parties to defend the merits of their cases without gathering essential evidence from the normal discovery process.  *Id*.

An exception to this rule occurs if a defendant's exhibit is both referred to in the plaintiff's complaint and is also central to the plaintiff's claim.  *Id*.  But that exception is inapplicable where a defendant's exhibit may be inaccurate or lack definite authenticity.  *Id*.  Here, plaintiff's trademark application for the LOGO MARK is certainly important.  However, the exception to Rule 12(d) is inapplicable because defendants rely on two documents that provide two different dates.  These differences raise questions about the exhibits' accuracy and authenticity.  Due to these questions, the court will wait until later in the litigation to consider defendants' exhibits.

This case also demonstrates the danger in considering a defendant's exhibits at the motion-to-dismiss stage.  As noted above, defendants' exhibits provide different dates for plaintiff's first use of the LOGO MARK.  (Doc. 8-1; 8-2.)  Defendants continually reference the exhibit that lists plaintiff's first use on December 1, 2014 (labeled Trademark Electronic Search System, or the "TESS document"), but there is little discussion of the other exhibit—which adds the words "at least as early

as" before the date (labeled Trademark/Service Mark Application, or the "TEAS document"). (Doc. 8-1; 8-2.) However, the TEAS document, which includes the phrase "at least as early as," is plaintiff's *complete* trademark application. (Doc. 8-2.)

In contrast, the TESS document, which only has a date stamp, is from the U.S. Patent Office's Trademark search system. This search engine includes a highly technical program that sorts massive amounts of images and text into hundreds of different categories. However, to limit the volume of data, the system is automated to strip various information from complete trademark applications (such as text in front of a listed date). So, it is the TEAS document that provides the complete trademark application, while the TESS document provides a condensed version. *See Navajo Nation*, 935 F. Supp. 2d at 1157 (involving a trademark case where, after submitting documents from the Patent Office's database, "[d]efendants . . . cherry-picked portions of the USPTO's records to contest the merits of [p]laintiffs' case or support their own defenses. Other portions of those same records may support [p]laintiffs' interpretation of the file histories, and thus the evidentiary value of the materials submitted by [d]efendants is subject to 'reasonable dispute,' and thus not best suited for judicial notice.").

Even if the court considered defendants' exhibits, there would still be insufficient evidence in the record to grant the motion to dismiss. Trademark cases are not resolved with only a stopwatch that pinpoints the time of first use. Put differently, the prior use concept is not *only* about who used a Mark first. Trademark rights are also based, in large part, on the *way* that a holder uses a Mark. 1 ANNE GILSON LALONDE, GILSON ON TRADEMARKS § 3.02 (Matthew Bender 2014).

Here, plaintiff's allegations point to extensive promotion and use of the LOGO MARK, and those are actions that strengthen plaintiff's interest in the LOGO MARK. *See Toytrackerz LLC*, 2009 WL 2591329, at *4 (citing 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:65 (4th ed. 2009)) ("[R]ights to a trademark are acquired by use and not by

-11-

registration. Unlike the registration of a patent, a trademark registration of itself does not create the underlying right to exclude."); *see also* S. REP. NO. 100-515, at 4 (1988) (demonstrating that the legislature's intent in amending the Lanham Act was to protect producers "from pirates and counterfeiters" where "the owner of a trademark has spent considerable time and money bringing a product to the marketplace"). Plaintiff's further allegations about placing the LOGO MARK on business cards and advertising throughout Kansas and Missouri also strengthen plaintiff's interest. (Doc. 7 at 3–4.) These allegations are sufficient to suggest a plausible trademark right.

Regardless of whether the court considers defendants' exhibits, the court cannot resolve the case at this stage in the litigation.

**B.     The WORD MARK**

Defendants contend that the "ambiguity and uncertainty surrounding [plaintiff's] alleged use of the term "Gold Glove" justifies dismissal of plaintiff's WORD MARK claims. (Doc. 11 at 2.) Specifically, defendants argue that "Gold Glove" is so common that there is no risk of consumer confusion. (Doc. 8 at 6–7.) In addition, defendants argue that the WORD MARK is an unprotected term because "Gold Glove" is a generic baseball term that lacks a distinct connection between plaintiff and the general public. (*Id.* at 7.)

Defendants' arguments are premature. As discussed in the LOGO MARK section above, the pleading standards under Rule 8(a) do not require extensive detail because the purpose is to provide notice of a plaintiff's claims. *Zapata v. IBP, Inc.*, 19 F. Supp. 2d 1215, 1220 (D. Kan. 1998) (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991)) (repeating that "[t]he purposes of the notice pleading requirements of Rule 8(a) are 'to give the defendant fair notice of the claims against him' to enable him to adequately respond to the allegations.").

Here, plaintiff alleges sufficient facts to state a plausible claim for relief on its WORD MARK claims. Plaintiff states that it first used the label "Gold Glove Boot Camp" a year before defendants opened Gold Glove Baseball Academy LLC. (Doc. 7 at 5.) Plaintiff also notes that it continually used the WORD MARK in plaintiff's website address, advertising materials, and to "identify plaintiff as the source of services bearing the [WORD MARK]." (*Id.* at 4.) Taken together, these allegations are sufficient to show plaintiff's protected interest based on substantial use and the public's association of plaintiff with the WORD MARK.

Next, plaintiff states that in November of 2013, defendants began to use the terms "Gold Glove KC" and Gold Glove Academy." (*Id.* at 5–6.) Plaintiff also alleges that defendants used those terms to advertise to the same audience as plaintiff, offer the same services as plaintiff, and create clothing that was "likely to cause . . . confusion, mistake, or" deception that would result in the "purchasing public . . . believing that the services of" defendants were the same as those provided by plaintiff. (*Id.* at 5.)

These allegations state a plausible claim for infringement of plaintiff's WORD MARK. It is reasonable to infer that the public would confuse the two services because of the similarities listed above. While defendants point to various differences between the Marks, courts are to "give the similarities of the marks more weight than the differences." *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1124–44 (D. Kan. 2008) (internal quotation marks and citation omitted). This emphasis is especially appropriate here because both parties targeted the same audiences to sell the same products and services, which "is more likely to create confusion than use of the same mark on a distantly related good." *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 834 (10th Cir. 2005). While the parties may find, after discovery, that customers are not confused about the differences, "[a]t this stage in the litigation, it cannot be concluded as a matter of law that there is no reasonable possibility that

-13-

purchasers might be confused or misled by" defendants' use of terms similar to plaintiff's WORD MARK. *Nature's Way Products, Inc. v. Nature-Pharma, Inc.*, 736 F. Supp. 245, 250 (D. Utah 1990).

Even if there is some weak link in plaintiff's allegation chain, dismissal is still improper because both of defendants' arguments involve questions of fact. *Australian Gold, Inc.*, 436 F.3d at 1240 (holding that consumer confusion is a question of fact); *Donchez*, 392 F.3d at 1216 (categorizing a Mark's distinctness as a factual question). In fact, the likelihood of consumer confusion is measured with a non-exhaustive, fact-specific, six-factor test, with each factor changing in importance based on "a variety of circumstances, including the force of another factor." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). And, as consumer confusion is "[t]he key inquiry in a trademark infringement case," it would be improper to try to resolve the issue at the motion-to-dismiss stage. *Team Tires Plus*, 394 F.3d at 832; *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1091 (10th Cir. 1999)) (providing that "the similarity of the marks is the 'first and most important factor.'").

Ultimately, trademark cases are laden with multiple fact-specific inquiries, making "dismissal for failure to state a claim . . . 'appropriate in only the most extreme trademark infringement cases.'" *Navajo Nation*, 935 F. Supp. 2d at 1162 (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009); 32 FEDERAL PROCEDURE, LAWYER'S EDITION § 74:507 (2008)).

## IV.   CONCLUSION

At this stage of the litigation, the court finds that plaintiff has sufficiently alleged plausible claims trademark claims in relation to the WORD MARK and the LOGO MARK. In addition, defendants have failed to show that a more definite statement is warranted—for largely the same reasons discussed above. Plaintiff's Amended Complaint is not "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Defendants' motion is therefore denied.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss plaintiff's First Amended Complaint or, alternatively, to Require a More Definite Statement (Doc. 8) is denied.  The parties should contact the magistrate judge to set up a scheduling conference.

Dated this 30th day of March, 2015, at Kansas City, Kansas.

                                    s/ Carlos Murguia
                                    Carlos Murguia
                                    United States District Judge